# Arthurs, Appellant, *v.* Wilson.

*Land law—Surveys—Boundaries—Instructions.*

1. On an issue to determine the location of a particular line of a survey it is reversible error to affirm without qualification a point which leaves out of view entirely one of the principal facts upon which the location of the tract in controversy is necessarily based; and this is the case although the court in its general charge has correctly laid down the law as to the controlling effects of the marks upon the ground, and of the courses and distances of a survey in the absence of the marks or of the evidence of their previous existence.

2. The correct statement of the law in the general charge does not counteract the effect of the affirmance of an erroneous principle contained in a prayer for specific instructions or a point for charge.

Argued May 3, 1909. Appeal, No. 34, April T., 1908, by plaintiff, from judgment of C. P. Jefferson Co., Jan. T., 1904, No. 3, on verdict for defendants in case of Samuel B. Arthurs v. Annie L. Wilson et al. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Trespass vi et armis to recover damages for an alleged illegal

taking of lime from the property of the defendants.    Before
REED, P. J.

The opinion of the Superior Court states the case.

Verdict and judgment for defendants.    Plaintiff appealed.

*Errors assigned* were (1, 2) the instructions quoted in full in
the opinion of the Superior Court.

*Charles Corbet,* with him *Clark & Stewart,* for appellant.

*Cadmus Z. Gordon,* for appellees.

OPINION BY BEAVER, J., October 11, 1909:

The court below clearly and correctly, in the general charge,
instructed the jury as to the facts and the law relating thereto
by which they were to determine the location of the eastern line
of a survey, based upon a warrant known as No. 3,927.    The
original survey in pursuance of this warrant was made on
September 27, 1793, but having been found to interfere with
prior surveys it was finally located by William P. Brady, deputy
surveyor, upon an order from the Board of Property, between
January 13, 1795, the date of the order, and February 3, 1795,
when the survey was returned to the land office.    According to
this survey, as returned, the southwest corner was a white oak,
the northwest corner a chestnut, the southeast corner a cucum-
ber and the northeast corner a maple.    The western line of the
survey does not seem to have been in dispute, being well known
and located.    At about the proper place there was a dead cucum-
ber in such a state of decay that it could not be definitely de-
termined from the remains of the tree whether or not it was
the original southeast corner of the tract.    It seems, however, to
have been regarded by both sides as fixed by repute and general
consent as the original corner and is so assumed by the defend-
ants.

The principal question of fact in dispute between the plaintiff
and defendants was the location of the maple corner, as called
for, as to which the surveyors of the plaintiff and defendants
differed.    The tree had disappeared.    The plaintiff's surveyors

located the point at which it had grown and been located by the surveyor as the northeast corner of the tract by general repute and the consent of the people of the immediate vicinity. If the true east line of the survey made upon warrant No. 3,927 was a line connecting the cucumber and the maple, as located by the plaintiff's surveyors, the land in dispute belonged to the plaintiff. If, however, the maple corner was not at the point designated by plaintiff's surveyors and could not be located, the line, as pointed out by the court, would be the one starting from the cucumber and running north one degree west, as of the date of the survey, which, as the court below said, with a proper variation of the magnetic needle, would now be about four degrees and thirty minutes east.

The court below in its charge to the jury from the paragraph beginning: "The survey calls for a maple at the northeast corner and for a cucumber at the southeast corner of the tract; and, if these trees were standing on the ground and it could be determined that they were the trees called for as marking these corners, all that would be necessary to establish the east line of the tract would be to run a straight line from one tree to the other, thus connecting the two corners," to and including the paragraph: "If, after a fair and impartial, as well as careful, consideration of all the testimony, you are convinced that the line to which the plaintiff claims is the true line run on the ground for the purpose of closing warrant No. 3,927 and, therefore, the true east line of that warrant, then you will return a verdict in his favor for the value of the limestone which the defendant took from the land in question and converted to her own use. If you are not so convinced, but are satisfied that the line to which the defendant claims is the true east line of warrant No. 3,927, then you will find for the defendant," correctly lays down the law as to the controlling effect of the marks upon the ground, as established by the surveyor and called for in the return of survey, and the character of the evidence by which the existence of such marks at the time of the survey can be determined, and also correctly states the law as to the controlling effect of the courses and distances of a survey in the absence of the marks or of evidence of their previous existence.

The defendants presented to the court in their third point for charge, this proposition: "3. If the jury find from the evidence that the cucumber stub represented on the maps of the plaintiff and defendants as at the southeastern corner of tract No. 3,927, and the northeastern corner of tract No. 2,930, is the original corner of said tracts at that point, then, in the absence of any evidence of other marks bearing the date of 1795, upon the lines of tract No. 3,927, the eastern line of said tract must be ascertained by running a line from the cucumber corner north one degree west (as of the magnetic bearing of 1795), 320 rods in accordance with the official return of the deputy surveyor, which line, so run, will cast the land in dispute in this case in tract No. 3,927." This was affirmed without qualification and is assigned for error and is relied upon as the principal error in the case.

The point itself, in view of the charge of the court which correctly stated the principles which must govern the location, was confusing and misleading. It apparently purposely ignores the previous existence and location of the maple corner, as called for by the survey of 1795, the location of which was, in the opinion of the plaintiff's surveyors, definitely fixed. The point speaks of the absence of any evidence of other marks bearing the date of 1795 upon the "lines" of tract No. 3,927, but the court had said in its charge that, if the places of the cucumber and maple corners were fixed, the eastern line would necessarily be established by connecting these two corners, and it seems to us that the affirmance of this point should have been guarded by a qualification which would have called the attention of the jury to the true principles of location, as laid down by the court in its charge. The plaintiff, therefore, has good reason to complain of the unqualified affirmation of this point, inasmuch as it leaves out of view entirely one of the principal facts upon which the location of the tract in controversy was necessarily based. As has been often held in both of our appellate courts, the correct statement of the law in the general charge does not counteract the effect of the affirmance of an erroneous principle contained in a prayer for specific instructions or point for charge.

The second assignment of error is based upon a rather hypercritical view of the language of the court below in reference to the mental state of the jury, as influenced by the testimony of the plaintiff and defendants respectively. The language complained of is as follows: "If, after a fair and impartial, as well as careful, consideration of all the testimony, you are convinced that the line to which the plaintiff claims is the true line run on the ground for the purpose of closing warrant No. 3,927, and, therefore, the true east line of that warrant, then you will return a verdict in his favor for the value of the limestone which the defendant took from the land in question and converted to her own use. If you are not so convinced but are satisfied that the line to which the defendant claims is the true east line of warrant No. 3,927, then you will find for the defendant." We can see little, if any, difference between the language used by the court as to the mental state of the jury in reaching a conclusion in favor of the plaintiff and in favor of the defendants. To be convinced is to be "satisfied by evidence in respect to truth or falsity." To be satisfied is "to be free from uncertainty or doubt." We confess that we are unable to see that the claim of the plaintiff that a higher standard of evidence was laid down by the court for him than for the defendants is well founded. The second assignment is, therefore, not sustained.

Believing as we do that the jury may have been misled by the unqualified affirmance of the defendants' third point, which constitutes the first assignment of error, we are compelled to send the case back for a new trial, in accordance with the law, as clearly laid down by the court in its general charge.

Judgment reversed, with a new venire.